

**NUMBER 13-07-679-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RODOLFO GUERRERO, M.D.,**                                    **Appellant,**

**v.**

**JUAN LIMON AND ELIDA LIMON,**                               **Appellees.**

---

**On appeal from the 93rd District Court of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Yañez**

Appellant, Rodolfo Guerrero, M.D., appeals the denial of his motion to dismiss a

medical negligence lawsuit filed by appellees, Juan and Elida Limon.  By a single issue,

appellant contends that the expert report submitted by appellees does not constitute a

good-faith effort to comply with the expert-report requirements.[1]  Specifically, appellant

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (l), (r)(5)-(6) (Vernon Supp. 2007).  Appellees
submitted an expert report by Daniel L. Miller, M.D., a professor of surgery at Emory University School of

contends the report does not establish a causal link between the alleged negligence and appellees' injuries. We affirm the trial court's order denying the motion to dismiss.

## Background

Juan Limon went to the emergency room at Knapp Medical Center, complaining of a piece of meat lodged in his throat. An esophageal scope was used to dislodge the meat. S. Murthy Badiga, M.D., performed a dilation of Limon's esophagus, and Limon was discharged. Approximately four hours later, Limon returned to the emergency room, complaining of abdominal pain. A CT scan revealed a perforation in his esophagus. Guerrero attempted to surgically repair the perforation, and relied solely on a visual inspection to determine that the perforation was closed. The repair was unsuccessful. Limon's condition deteriorated; he was transferred to McAllen Medical Center, where he underwent an esophagectomy and esophageal exclusion. Limon developed acute renal failure, which required dialysis. He was eventually transferred to a long-term care facility on dialysis.

## Jurisdiction

We begin by addressing our jurisdiction over this interlocutory appeal. Appellees raise the issue of jurisdiction, noting that section 54.014 of the civil practice and remedies code authorizes an appeal only from (1) an order that denies relief sought under section 74.351(b) and (2) an order that grants relief sought under section 74.351(l).[2] Since appellees filed their brief, the supreme court has held that a challenge to the sufficiency

_____

Medicine and an expert in esophageal diseases.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9), (10) (Vernon 2008).

2

of an expert report is a challenge pursuant to section 74.351(b) that no compliant report has been served.[3] Therefore, we have jurisdiction to consider appellant's interlocutory appeal.[4]

## Standard of Review and Applicable Law

We review the trial court's decision to deny a motion to dismiss under an abuse of discretion standard.[5] The trial court is limited to reviewing the information within the four corners of the report.[6] "An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles."[7] An appellate court may not reverse for abuse of discretion simply because it would have decided the matter differently.[8]

"With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court."[9] The appellant must "establish that the trial court could reasonably have

---

[3] *See Lewis v. Funderbunk*, 253 S.W.3d 204, 207-08 (Tex. 2008); *see also Gelman v. Cuellar*, No. 13-07-00651-CV, 2008 Tex. App. LEXIS 6173, at *5 (Tex. App.–Corpus Christi August 14, 2008, no pet. h.).

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9).

[5] *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001); *see Gelman*, 2008 Tex. App. LEXIS 6173, at *6.

[6] *Palacios,* 46 S.W.3d at 878.

[7] *Moore v. Sutherland*, 107 S.W.3d 786, 789 (Tex. App.–Texarkana 2003, pet. denied) (citing *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)).

[8] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985).

[9] *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992).

3

reached only one decision."[10]  Conversely, a trial court has no discretion in determining what the law is or in applying the law to the facts.[11] "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."[12]

Section 74.351 requires that a plaintiff serve on each party "one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted."[13] An "expert report" is defined as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.[14]

A court must grant a motion to dismiss under section 74.351(b) if, after the 120-day deadline has passed, it appears to the court that the report does not represent an objective, good-faith effort to comply with the definition of an expert report.[15]

To qualify as a "good-faith effort," the report must "provide enough information to fulfill two purposes": (1) it must "inform the defendant of the specific conduct the plaintiff has called into question," and (2) it must "provide a basis for the trial court to conclude that

---

[10] *Id.* at 840.

[11] *Id.*

[12] *Id.*

[13] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

[14] *Id.* § 74.351(r)(6).

[15] *Id.* § 74.351(l).

the claims have merit."[16]  "A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes.  Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements."[17]

**Whether Appellant Waived Objections to Expert Report**

Appellant was served with appellees' original petition on March 8, 2007.  It is undisputed that a copy of appellees' expert report was attached to the petition.  Section 74.351(a) provides, in pertinent part, that a defendant must file and serve "any objection to the sufficiency of the [expert] report not later than the 21st day after the date it was served, failing which all objections are waived."[18]  Appellant filed his objections to appellees' expert report on May 23, 2007.  Thus, appellees argue that because any objections to the expert report were due by March 29—twenty-one days after the report was served with the petition—appellant has waived any objections to the expert report.

Appellant responds that "the expert report which was evidently furnished with [appellees' petition] does not satisfy the service requirement of Section 74.351 and [appellant] did not waive his objections to such report by failing to object within twenty-one days of his receipt of [appellees'] Original Petition."  According to appellant, appellees did not "serve" their expert report until May 2, 2007, along with their responses to appellant's requests for disclosure.  Appellant argues that because his objections to the expert report

---

[16] *Palacios*, 46 S.W.3d at 879.

[17] *Id.*

[18] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

5

were filed on May 23, 2007—within twenty-one days of May 2—his objections were timely filed and are not waived.

Assuming, without deciding, that appellant's objections to the expert report were timely filed, they are without merit. Because we conclude that the trial court did not abuse its discretion in determining that appellees' expert report constituted a good-faith effort to comply with the statutory requirements,[19] we decline to address appellees' waiver argument.[20]

## Sufficiency of Expert Report

Appellant contends that appellees' expert report "wholly fails to establish the required causal link between Appellant's alleged breaches of the standard of care and Plaintiff's injuries." According to appellant, appellees' report is not representative of a good-faith effort because "the trial court and [appellant] are required to guess as to how the alleged breaches of the standards of care caused [appellees'] injuries." We disagree.

Dr. Miller's expert report provides, in pertinent part:

> Dr. Guerrero's operative and surgical care was not within the standard of care for treatment of an esophageal perforation. First of all, the standard of care required that Mr. Limon be explored via the right chest to address the perforation because the perforation was right-sided and more contamination was seen in the right chest on the CT scan. Dr. Guerrero breached the standard of care by performing the procedure through a left thoracotomy.

> Dr. Guerrero was correct to try a primarily repair [sic] of the perforation because it was less than 24 hours. However, his repair breached the standard of care, technically. He was correct in debriding the necrotic esophageal tissue but the full extent of the mucosa rupture was not identified which required performing a limited myotomy both superiorly and inferiorly.

---

[19] *See id.* § 74.351(r)(6).

[20] *See* TEX. R. APP. P. 47.1.

6

The mucosal perforation is always longer than the muscular perforation. To increase the chance of a successful repair a myotomy is a mandatory requirement under the standard of care. Dr. Guerrero did not perform the required myotomy and thus violated the standard of care. The standard of care for repair of an esophageal perforation is a two-layer closure (mucosa and muscle layers). Dr. Guerrero closed the perforation in a single layer with just four stitches, which breached the standard of care. It is routine to reinforce the perforation repair with vital tissue. Dr. Guerrero did place pleural tissue over the repair site, but it should have been wrapped in a 360 degree fashion around the esophagus at the perforation repair site to prevent slippage of the flap.

The standard of care also required that the integrity of the esophageal repair be verified in the operating room prior to closure. Dr. Guerrero relied solely on visual inspection to determine the integrity of the esophageal closure. The standard of care required confirmation of the integrity of the esophagus by filling the chest with sterile water and injecting air through a nasogastric tube to confirm absence of leakage following closure of the esophageal musculature. The records contain no evidence that this was done, which violated the standard of care. If the repair had been tested, the continued leak would have been detected prior to surgical closure, in reasonable medical probability.

To ensure the long-term success of repairing an esophageal perforation, the standard of care required that there must be no distal obstruction of the esophagus which would prevent the perforation from healing because of persistent elevated intraluminal pressure. Specifically, the standard of care required that Dr. Guerrero dilate the Schatzki's ring with a Maloney dilator prior to and at the time of the repair. Dr. Guerrero failed to do so, and thus, breached the standard of care. It was of interest at the time of esophageal exclusion at McAllen Medical Center there was no mention of the flap on the esophagus which may not have been performed at all. Finally, the patient was inadequately covered for possible associated fungus infection related to an esophageal perforation, which is one of the most common infections resulting from an esophageal perforation. The standard of care required that Dr. Guerrero give the patient antifungal antibiotics pre- and post operatively. He failed to do so and thus breached the standard of care. The patient was not given antifungal antibiotics until he transferred to McAllen 5 days after the perforation. As a result, Candida albicans, a fungus, was the only pathogen that grew out from the mediastinal cultures at the time of esophageal exclusion. Also, the patient' [sic] mediastinum and chest was inadequately drained at the time of esophageal repair. Dr. Guerrero's negligent failure to correct the perforation led directly to continued contamination of the chest cavity and caused Mr. Limon to undergo a life-saving esophagectomy and esophageal exclusion.

7

Drs. Badiga and Guerrero [sic] treatment of Mr. Limon breached the standard of care for the treatment of an esophageal perforation. Their severe negligence resulted in significant suffering, inability to eat, need for future esophageal reconstruction to restore esophageal continuity, need for chronic dialysis and potential lost [sic] of life because of delayed (5 days; mortality greater than 80%) and correct treatment of an esophageal perforation for Mr. Limon.

We conclude that Dr. Miller's report provides the causal links between the alleged negligence and appellees' injuries. Dr. Miller stated that appellant's "negligent failure to correct the perforation *led directly to continued contamination of the chest cavity and caused* Mr. Limon to undergo a life-saving esophagectomy and esophageal exclusion."[21] He also stated that "[a]s a result" of appellant's failure to give Mr. Limon antifungal antibiotics, Mr. Limon developed a fungus infection. We conclude that Dr. Miller's expert report constituted a good-faith effort to satisfy the expert report requirement for the causation element.[22] We overrule appellant's sole issue.

### Conclusion

We affirm the trial court's order denying appellant's motion to dismiss.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 28th day of August, 2008.

---

[21] Emphasis added.

[22] *See Palacios*, 46 S.W.3d at 879.

8